**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Patrick Poole, | : | Case No. 3:08 CV 2316 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| M-Tek, Incorporated, | : | |
| Defendant. | : | |

The parties have consented to have the undersigned magistrate conduct all proceedings and enter judgment in this case alleging discrimination prohibited, *inter alia,* by the Age Discrimination in Employment Act (ADEA) and the Americans with Disability Acts (ADA). Defendant's Motion for Summary Judgment (Docket No. 27), Plaintiff's Opposition (Docket No. 47) and Defendant's Reply (Docket No. 59) are pending. For the reasons that follow, the Magistrate grants Defendant's Motion for Summary Judgment.

## I. THE PARTIES

Plaintiff is a United States citizen. He was a resident of Sycamore, Wyandot County, Ohio (Docket No. 17, ¶s 1 & 2).

Defendant is an automotive parts manufacturer incorporated under the laws of the State of Tennessee. Defendant's principal place of business is in Tennessee and the corporation also is authorized

to conduct business in Upper Sandusky, Wyandot County, Ohio (Docket No. 17, ¶s 3 &4).

## II. JURISDICTION

The district court has original jurisdiction of all civil actions where the matter exceeds the sum or value of $75,000, exclusive of costs and interest, and is between citizens of different States. 28 U. S. C. § 1332(a)(1) (Thomson Reuters 2009).

## III. FACTUAL BACKGROUND

Plaintiff was hired by Defendant on July 18, 2005 at the age of 68 years (Docket No. 47, Exhibit 1, p. 3). As two of his several job responsibilities, Plaintiff inspected a rack of six rear pillars and assembled tailgates (Docket No. 47, Exhibit 1, pp. 5 and 9). Plaintiff developed an umbilical hernia when he lifted tubs from the pillars (Docket No. 47, Exhibit 1, p. 5). He ruptured the hernia when he was required to inspect and/or assemble tailgates (Docket No. 47, Exhibit 1, pp. 9 and10). Plaintiff injured his back when he tried to push a faulty rack (Docket No. 47, Exhibit 1, p. 13). While holding an automotive part, Plaintiff's eyes were inundated with an abrasive spray used on the tailgates to mask scratches and/or blemishes (Docket No. 47, Exhibit 1, p. 15).

Plaintiff filed an incident report citing his eye injury (Docket No. 47, Exhibit 1, 16/25). During an unannounced visit in 2007, Occupational Safety and Health Administration (OSHA) personnel tested the air quality surrounding the use of the abrasive spray. The test results showed normal air quality (Docket No. 47, Exhibit 11, p. 6/7).

Plaintiff filed two claims for worker compensation. One claim was based upon the rupture of his hernia. Defendant did not approve this claim (Docket No. 49, p. 60). The second claim related to the spray of an abrasive to his eyes. Defendant approved that claim (Docket No. 49, p. 64 - 65).

Plaintiff's medical leave commenced on February 27, 2007 as a result of his back condition

(Docket No. 27, Exhibit 10, ¶ 8). Plaintiff developed problems with his hernia so his physician authorized Plaintiff's absence from work on August 6, 2007 through November 12, 2007 (Docket No. 47, Exhibit 1, p. 18; Docket No. 47, Exhibit 10, ¶s 8 and 9). In the meantime, on September 26, 2007, Defendant terminated Plaintiff from its employment (Docket No. 17, ¶s 1, 18 and 20; Docket No. 47, Exhibit 10 with Exhibit B as an attachment).

Plaintiff filed worker compensation claims for his injured back and the injury to his eyes (Docket No. 47, Exhibit 1, pp. 14, 16 -17)  Plaintiff was awarded worker compensation benefits (Docket No. 17, ¶ 38).

## IV. PROCEDURAL BACKGROUND

Plaintiff filed a charge with the Ohio Civil Rights Commission (OCRC)/Equal Employment Opportunity Commission (EEOC). On September 16, 2008, Petitioner was advised that based upon the investigation, no statutory violations had occurred . The case was dismissed and a right-to-sue-notice was forwarded to Plaintiff (Docket No. 1). Plaintiff filed a timely lawsuit in federal court (Docket No.1). Defendant filed a Motion for Summary Judgment.

## V.  MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *In re Rodriguez,* 487 F.3d 1001, 1007 (6th Cir. 2007) (*citing* FED. R. CIV. P. 56©); *see also Celotex Corp. v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). "The moving party bears the initial burden of showing the absence of a genuine issue of material fact." *Id.* (*citing Plant v. Morton International, Incorporated,* 212 F.3d 929, 934 (6th Cir. 2000)). Once the movant has satisfied its burden, the nonmoving party must produce evidence showing

that a genuine issue remains. *Id.*

The court must credit all evidence presented by the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* The nonmovant must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1344 (1986)). Summary judgment is proper when the nonmoving party has had adequate time for discovery and yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (*citing Celotex,* 106 S. Ct. at 2552). The Sixth Circuit Court of Appeals reviews a district court's grant of summary judgment de novo. *Id.* (*citing Spencer v. Bouchard*, 449 F. 3d 721, 727 (6th Cir. 2006)).

## VI. DISCUSSION

Defendant contends that there are no genuine issues of material fact; consequently, Defendant is entitled to judgment as a matter of law on five issues. First, Plaintiff cannot establish a prima facie case for discrimination based on age. Second, Plaintiff cannot establish a prima facie case for discrimination based on disability. Third, Plaintiff cannot establish that he was terminated as retaliation for filing a worker compensation claim. Fourth, Plaintiff cannot establish a prima facie case for hostile work environment. Fifth, Plaintiff's claim for violation of Ohio's public policy lacks merit.

**A.    DISCRIMINATION BASED ON AGE.**

In the Amended Complaint, Plaintiff alleges that he suffered a loss of employment as a result of his age, that he was qualified for the position and that he was replaced by two younger persons (Docket No. 17, ¶s 19, 23 & 28). His claims arise under state and federal discrimination prohibitions.

Defendant argues that Plaintiff cannot meet the standards set forth in an age discrimination claim.

Specifically, Plaintiff was not replaced by a newly hired younger employee. Plaintiff cannot establish a prima facie case for discrimination based on his age.

### 1. THE ADEA STANDARD

The ADEA makes it unlawful for an employer to discharge any individual because of the individual's age. 29 U. S. C. § 623(a)(1) (Thomson Reuters 2009). An employee can meet the evidentiary burden of establishing an age discrimination case by either direct or circumstantial evidence. *Martin v. Toledo Cardiology Consultants, Incorporated*, 548 F.3d 405, 410 (6th Cir. 2008) (*citing Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348 (6th Cir. 1997)). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (*citing Jacklyn v. Schering-Plough Healthcare Products Sales Corporation,* 176 F.3d 921, 926 (6th Cir. 1999)).

If the plaintiff is unable to provide direct evidence of an improper motive, the plaintiff may offer indirect and circumstantial evidence that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred. *Id.* (*citing Kline,* 128 F.3d at 348). Circumstantial evidence may be used to establish an age discrimination case under the *McDonnell Douglas* burden shifting framework. *Id.* (*citing McDonnell Douglas Corporation v. Green*, 93 S. Ct. 1817 (1973)). To establish a prima facie case of age discrimination under this analysis, the plaintiff must show that (1) he or she was a member of the protected class, (2) he or she was subject to an adverse employment action, (3) he or she was qualified for the position, and (4) he or she was replaced by someone outside the protected class*. Id.* (*citing Kline*, 128 F. 3d at 349). The plaintiff can satisfy the fourth prong of the prima facie case by showing that plaintiff "was treated differently from similarly situated employees outside the protected class." *Id.* (*citing Mitchell v. Vanderbilt University,* 389 F.3d 177, 181 (6th Cir.2004)). To

satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar "in all of the *relevant* aspects." *Id.* (*citing Ercegovich v. Goodyear Tire & Rubber Company,* 154 F.3d 344, 352 (6th Cir. 1998) (italics in original)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* (*citing Kline*, 128 F.3d at 342). Once the defendant meets this burden, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id.* at 410-411 (*citing Manzer v. Diamond Shamrock Chemicals Company,* 29 F.3d 1078, 1083 (6th Cir. 1994)).

Ohio courts generally decide state law age discrimination claims under federal law interpreting Title VII. *Corrigan v. United States Steel Corporation*, 478 F.3d 718, 727 (6th Cir. 2007) (*citing Bucher v. Sibcy Cline, Incorporated,* 137 Ohio App.3d 230, 738 N.E.2d 435, 442 (2000)). Specifically, state law age discrimination claims are resolved by determining whether a plaintiff has made a *prima facie* case under the *McDonnell Douglas* formula. *Id.* (*citing Mauzy v. Kelly Services*, 75 Ohio St.3d 578, 664 N.E.2d 1272, 1276 (1996); *McDonnell Douglas*, 93 S. Ct. at 1824).

### 2. ANALYSIS

Plaintiff failed to offer any direct evidence that correlates with his allegation that he was terminated because of his age. Therefore, the Magistrate analyzes Plaintiff's claim based on the presentation of circumstantial evidence.

The protected class includes all workers 40 years or older. *Corrigan v. United States Steel Corporation*, 478 F. 3d 718, 727 (6th Cir. 2007). Here, the parties concur that Plaintiff is a member of the protected age class. At the time Defendant hired him, Plaintiff was 68 years of age. At the time of discharge, Plaintiff was 70 years of age (Docket No. 47, Exhibit 1, p. 3/25). Plaintiff meets the first prong

of the *McDonnell Douglas* framework.

With respect to the second prong of this analysis, the parties concede that he was discharged (Docket No. 17, ¶s 18 & 20; Docket No. 47, Exhibit 2, p. 6/10). There is sufficient evidence that Plaintiff suffered an adverse employment action. Plaintiff meets the second prong of the *McDonnell Douglas* framework.

Considering the third prong of the prima facie case analysis, there is no indication that Plaintiff did not have the education, training, skills or experience required to perform his job duties (Docket No. 47, Exhibit 10's Exhibit B). Plaintiff was reassigned once his supervisor noticed that he was unable to "keep up with production rates on faster pace jobs; otherwise, he was never disciplined by the department coordinator (Docket No. 47, Exhibit 2, p. 8/10; Exhibit 3, p. 26; Docket No. 56, ¶ 5; Docket No. 57, ¶ 5). Drawing all inferences in Plaintiff's favor, a reasonable juror would conclude that Plaintiff was qualified for the positions held. Thus, the third prong of the *McDonnell Douglas* test is met.

As to the fourth prong, Defendant's Human Relations Manager, Maureen Wise, contends that since Plaintiff was Defendant's oldest employee, it was inevitable that any new employees would have been younger than Plaintiff. However, her uncontroverted testimony was that M-Tek, Inc. did not hire a new employee to replace Plaintiff after he was terminated (Docket No. 28, Exh. 1, p. 26 ; Docket No. 50, Exhibit 2, pp. 29-30). In fact, after Plaintiff was discharged, the downturn in the economy caused the company to terminate a number of its employees (Docket No. 28, Exhibit 1, ¶ 27;). Even if all inferences are drawn in Plaintiff's favor, he has not shown that he was replaced by a younger individual.

Alternately, Plaintiff failed to identify any comparable co-worker outside the protected class with whom he was similar in all relevant aspects that had obtained more favorable treatment. Ms. Wise testified that all comparable employees that exceeded the six months leave provided in the medical leave policy

were all terminated (Docket No. 50, Exhibit 2, pp. 34-35).

Since Plaintiff failed to establish a prima facie case of age discrimination under the *McDonnell Douglas* analysis, the burden does not shift to Defendant to articulate a legitimate, nondiscriminatory reason for its employment action. Plaintiff did not convince the Court that he was replaced by someone outside the protected class. He also failed to satisfy the similarly situated requirement. Since Plaintiff cannot make a prima facie case for age discrimination in the main or in the alternative, Defendant is granted summary judgment as to his first (federal) and second (state) claims of age discrimination.

**B.    DISCRIMINATION BASED ON DISABILITY**

Plaintiff contends that he is disabled and/or perceived as having a disability (Docket No. 17, ¶s 30 & 31). Defendant argues that Plaintiff cannot produce direct or indirect evidence that he is disabled under state or federal law.

    **1.    THE ADA STANDARDS OF DISABILITY**.

Discrimination by a covered entity is prohibited against a qualified individual with a disability because of the disability of such individual in regard to the discharge of such employee. *Daugherty v. Sajar Plastics,* 544 F. 3d 696, 702-703 (6th Cir. 2008) (*citing* 42 U. S. C. § 12112(a)). Similarly, under Ohio law, any employer, because of a disability of any person, may not discharge without just cause or otherwise discriminate against that person in any matter directly or indirectly related to employment. Ohio Rev. Code § 4112.02 (Thomson Reuters 2009). Where the plaintiff seeks to establish a prima facie case by means of circumstantial evidence, the burden shifting framework of *McDonnell Douglas* is applied under both state and federal law. *Daughtery*, *supra,* 544 F. 3d at 703 (*citing Macy Hopkins County School Board of* Education, 484 F. 3d 357, 364 (6th Cir. 2007)). The plaintiff's burden at the summary judgment stage is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered

an adverse employment action under circumstance which give rise to an inference of unlawful discrimination." *Id.* There are "various context-dependent ways by which plaintiffs may establish a prima facie case, and not rigid requirements that all plaintiffs with similar claims must meet regardless of context." *Id.* (*citing Macy*, 484 F. 3d at 365) (emphasis omitted).

### 2.  STATUTORY FRAMEWORK FOR DISCRIMINATION BASED ON DISABILITY.

In making a prima facie case of disability discrimination under the ADA, it is required that a plaintiff show:  "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation: (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Id.* (*citing Macy v. Hopkins County School Board of Education*, 484 F. 3d 357, 365 (6th Cir. 2007) (internal citation and quotation marks omitted)).

The ADA defines a "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.  42 U. S. C. § 12102(2)(A)-(C) (Thomson Reuters 2009).  The ADA defines the term "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U. S. C. § 12111(8) (Thomson Reuters 2009).

Because the ADA is similar to the Ohio disability discrimination law, the regulations and cases interpreting the federal Act are consulted for guidance when interpreting  Ohio law.  *Wysong v. Dow Chemical Company*, 503 F. 3d 441, 450 (6th Cir. 2007) (*citing City of Columbus Civil Service Commissioner v. McGlone*, 82 Ohio St. 3d 569, 697 N. E. 2d 204, 206-207 (1998)).  Ohio law also prohibits any employee, because of the disability, to discharge that person without just cause.  *Id.* (*citing*

9

OHIO REV. CODE § 4112.02).  Under Ohio law, "disability" is defined as a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, leaning and working; a record of impairment or being regarded as having a physical impairment."  *Id.* (*citing* OHIO REV. CODE § 4112.01(A)(13)).

    **a.**    **PHYSICAL IMPAIRMENT.**

A physical characteristic must relate to a psychological disorder in order to qualify as an ADA impairment.  *EEOC v. Watkins Motor Lines*, 463 F. 3d 436, 442 (6th Cir. 2006).  A physical impairment is defined as "*[a]ny psychological disorder,* or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine.  *Id.* (*quoting* 45 C. F. R. § 84.3(h) (emphasis added); *Andrews v. State of Ohio*, 104 F. 3d 803, 808 (6th Cir. 1997)).  To qualify as an ADA impairment, a physical impairment must be physiologically caused.  *Id.* (*citing Cook v. State of Rhode Island, Department of Mental Health, Retardation and Hospitals*, 10 F. 3d 17 (1st Cir. 1993)).

The EEOC Guidelines define the phrase "substantially limits" as an inability to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compare to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.  *Cotter v. Ajilon Services,* 287 F. 3d 593, 597 (6th Cir. 2002*)* (*citing* 29 C. F. R. § 1630.2(j)(1)).  These guidelines advise that a court, in determining whether an individual is substantially limited in a major life activity, should consider the nature and severity of the

impairment, the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long term impact of or resulting from the impairment. *Id.* (citing 29 C. F. R. § 1630.2(j)(2)).

According to the regulations, the term "major life activities" connotes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Black v. Roadway Express*, 297 F. 3d 445, 449 (6th Cir. 2002) (*citing* 29 C. F. R. § 1630.2(i)).

      b.   **RECORD OF IMPAIRMENT**.

Under the ADA, a person has a record of an impairment if the person has a history of, or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities. 29 C. F. R. § 1630.2(k) (Thomson Reuters 2009).

      c.   **REGARDED AS DISABLED**.

The regarded-as-disabled prong of the ADA protects employees who are perfectly able to perform a job but are rejected because of myths, fears and stereotypes associated with disabilities. *Daughtery*, *supra*, 544 F. 3d at 703-704. Individuals may be regarded as disabled when " '(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities.' " *Id.* (*citing Gruener v. Ohio Casualty Insurance Company,* 510 F.3d 661, 664 (6th Cir. 2008) (*quoting Sutton v. United Air Lines,* 119 S. Ct. 2139, 2149 (1999)). In either case, it is necessary to show that the employer entertains misperceptions about the employee. *Id.*

**d.	ANALYSIS.**

In his Amended Complaint, deposition and affidavit, Plaintiff alleged, without elaborating, that he had a hernia, back pain and eye irritation. There is no evidence that any of these maladies were derived from or resulted in a psychological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the body systems. Moreover, there is no evidence that the limitations imposed by these impairments resulted in **significant** limitations in any major life activities. A reasonable person could not infer from the evidence presented that Plaintiff had a physical or mental impairment that substantially limited his performance of even one major life activity.

The deposition excerpts, affidavits and pleadings fail to show that Plaintiff had a history of, or that Defendant misclassified him as having a physical impairment that resulted in significant limitations in performing any of life's major activities. Even if Defendant misclassified Plaintiff, Plaintiff offered no evidence from which a reasonable person could infer that these ailments **substantially** limited his ability to perform major life activities. A reasonable juror could not infer from the evidence presented that Plaintiff had a record of impairment.

Finally, the Magistrate does not conclude that the evidence presented in the affidavits or depositions demonstrates that Defendant perceived or regarded Plaintiff's impairments as substantially limiting. There is no indication that Plaintiff's impairments were only substantially limiting because of the attitudes of his co-workers or supervisors.

The Magistrate finds that Plaintiff cannot make a prima facie case for discrimination based on disability as he failed to meet the threshold issue of determining that he is disabled as defined under the ADA. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's third (federal) and fourth (state) claims for relief set forth in the Amended Complaint.

C. **FAILURE TO ACCOMMODATE**.

Interwoven in his disability discrimination claim is Plaintiff's allegation that Defendant did not offer him light duty jobs that would accommodate his impairment. In addition, Defendant failed to accommodate his need to urinate frequently after prostate surgery (Docket No. 47, Exhibit). Defendant contends that Plaintiff was not deprived of a reasonable accommodation since he never requested such accommodation.

1. **REASONABLE ACCOMMODATION STANDARD**

When an employee seeks a reasonable accommodation, he or she must establish that a reasonable accommodation is possible. *Hopkins v. Oakland County Sheriff's Department,* 227 F. 3d 719, 728 (6th Cir. 2000). The employee bears the traditional burden of proof that he or she is qualified for the position with such reasonable accommodation. *Id.* If the employee establishes that a reasonable accommodation is possible, the burden shifts to the employer to prove that a reasonable accommodation would impose an undue hardship. *Id.* (*citing Monette v. Electronic Data Systems Corporation,* 90 F. 3d 1173, 1186 n. 12 (6th Cir. 1996)). However, if the plaintiff never requests such accommodation, the claim for failure to accommodate must fail. *Kocsis v. Multi-Care Management Incorporated*, 97 F. 3d 876, 883 (6th Cir. 1996).

2. **ANALYSIS**

Plaintiff argues that Defendant offered an accommodation to other employees so he assumed that they would also offer him an accommodation. By his own admission, Plaintiff never requested that Defendant accommodate him by shifting his job function (Docket No. 49, Exhibit 1, p. 74). Likewise, he never requested an accommodation after prostate surgery (Docket No. 49, Exhibit 1, p. 15) Because

Plaintiff failed to create a genuine issue of material fact as to whether he was entitled to a reasonable accommodation in these two instances, Defendant is entitled to summary judgment on this issue.

**D. RETALIATION**

Plaintiff contends that he was subjected to a retaliatory discharge for filing a worker compensation claim. This act was in violation of OHIO REV. CODE § 4123.90. Defendant argues that Plaintiff cannot establish a claim that he was terminated as retaliation for filing a worker compensation claim.

**1. RETALIATION STANDARD**

To establish a *prima facie* case of retaliatory discharge under OHIO REV. CODE § 4123.90, a plaintiff must show that he or she was injured on the job, that he or she filed a worker's compensation claim, and that there was a causal connection between filing of the workers' compensation claim and termination. *Miller v. TMT Logistics, Incorporated*, 2009 WL 1850313, *3 (N. D. Ohio 2009) (*citing Cunningham v. Kroger Company,* 2006 WL 3230323, at *2 (Ohio Ct. App. 2006)). Plaintiff may show causation with "any persuasive evidence of a retaliatory intent and by a direct or an indirect method of proof." *Id.* (*citing Buehler v. Ampam Commercial Midwest*, 2007 WL 2683520, at *5 (Ohio Ct. App. 2007)). When relying on indirect evidence, a plaintiff may rely on a combination of a "variety of factors," including timing, to infer causation. *Id.*

**2. ANALYSIS**

The Magistrate has reviewed the excerpts of depositions and affidavits taken from Plaintiff and Defendant's personnel and co-workers. The first two prongs of the tripartite test are easily met. However, the third part of the test is not satisfied.

Plaintiff was injured while working at least twice. Plaintiff continued to work after Defendant

14

approved his worker compensation claim for irritation to his eyes. He continued to work after he filed his claim for compensation emanating from the back injury (Docket No. 49, Exhibit 1, p. 64-65). There is no direct or other evidence that Defendant's intent to discharge Plaintiff was based on Plaintiff's exercise of his rights. Neither does the temporal proximity between the alleged advancement of Plaintiff's claim for worker compensation and Plaintiff's discharge support an inference of causation. There is a lack of other compelling evidence from which a reasonable factfinder could find that Plaintiff's discharge was directly linked to the filing of his worker compensation claims.

Although Plaintiff engaged in protected activity when he filed his workers' compensation claim and suffered an adverse employment action, his termination. Plaintiff failed to present evidence from which a causal connection between the two events can be inferred. Since Plaintiff cannot establish the causation element of the prima facie case for retaliatory discharge under OHIO REV. CODE § 4123.90, Defendant is granted summary judgment as to this issue.

### E. HOSTILE WORK ENVIRONMENT CLAIM

In his sixth claim for relief, Plaintiff argues that he endured unwelcomed harassment because of his disability (Docket No. 17, ¶ 45).

Defendant contends in its Motion for Summary Judgment that Plaintiff is unable to establish a claim for hostile work environment based on disability due to the lack of evidence and based on his failure to report any claimed harassment.

#### 1. HOSTILE WORK ENVIRONMENT STANDARD

Hostile environment harassment is "harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." *Hampel v. Food Ingredients*

*Specialties, Incorporated,* 89 Ohio St.3d 169, 729 N.E.2d 726, paragraph one of the syllabus (2000). To prevail on a claim of hostile environment harassment involving a disability, a plaintiff must prove that the harassment was unwelcome, that the harassment was based on his or her disability, that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and that either the harassment was committed by a supervisor, or the employer, through its agents or supervisory personnel, and that the agent or supervisory personnel knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Id.*

### 2. ANALYSIS

Plaintiff alleges that he was harassed but failed to mention any instances in which he was harassed because of his impairment. There was an occasion after surgery when Plaintiff claims that he was humiliated by his employer's denial of his request to leave the work station. He was denied a respirator to facilitate his breathing and a mat on which to stand. Although the denial of these accommodations clearly constitutes unwelcomed behavior, such denials were not severe or pervasive to the extent that the terms or conditions of the employment agreement were affected. The Magistrate does not conclude from these behaviors that Plaintiff was harassed because of his disability.

Failing to create a genuine issue of material fact that Plaintiff was subjected to conduct that was severe or pervasive enough to create a hostile environment, Defendant's request for summary judgment on this issue is granted.

### F. DISCRIMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff contacted OSHA with concerns about the work environment. He contends that Ohio has

a clear public policy against retaliation for opposing unlawful practices. Defendant fired him because he contacted OSHA. The acts of Defendant constitute discrimination in violation of public policy under Ohio common law. Of course, Defendant contends that Plaintiff was fired because he violated the terms of the employment contract.

**1.　PUBLIC POLICY LAW**

Under Ohio law, a public policy is "sufficiently clear" to support a wrongful discharge claim if its existence can be discerned from "the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, [or] the common law." *Bennett v. Board of Education of Washington County Joint Vocational* 2009 WL 2973001, *3 (S. D. Ohio 2009) (*citing Painter v. Graley,* 70 Ohio St.3d 377, 639 N.E.2d 51, 56 (Ohio 1994)). The Ohio Supreme Court has usually only found a clear public policy protecting an employee's activity when there is a statute that prohibits firing employees for engaging in a particular protected activity. *Id.* at *5 (*citing Tracy v. Northrop Grumman Systems Corporation,* No. 1:08cv126, 2009 WL 690255, at *5 (S. D. Ohio 2009)). In other words, "the wrongful discharge tort provides the remedy where the statute is silent." *Id.* (*citing Herlink v. Continental Airlines, Incorporated*, 2005 WL 2445947 at *5 (6th Cir. 2005)).

To succeed on a wrongful discharge claim in violation of public policy under Ohio law, a plaintiff must show that (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins v. United States Playing Card Company,* 466 F.

Supp.2d 954, 976 (S. D. Ohio 2006) (*citing Parry v. Mohawk Motors of Michigan, Incorporated,* 236 F.3d 299, 311 (6th Cir. 2000); *Painter, supra*, 70 Ohio St.3d at 384, n. 8, 639 N.E.2d at 57, n.8).

### 2. ANALYSIS

Ohio's Whistleblower statute, OHIO REV. CODE § 4113.52, and an abundance of statutory and constitutional provisions that support workplace safety form the basis of Ohio's public policy against discharging an employee who files a complaint regarding workplace safety. Plaintiff has satisfied the first prong of the analysis. Clearly, Defendant's dismissal under the prescribed circumstances, if true, would jeopardize the public policy against employees who file complaints. However, Plaintiff has not presented evidence from which a factfinder could conclude that his dismissal was motivated by conduct related to public policy.

Plaintiff has been unable to sustain the burden of proof required to show that he was discharged in violation of public policy. As a result, Defendant is granted judgment as a matter of law on this issue.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate grants Defendant's Motion for Summary Judgment. This case is dismissed.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: December 29, 2009